71 P.3d 1040

**In the Interest of Jane Doe.**

**Jane DOE I, Petitioner–Respondent,**

v.

**John DOE, Respondent–Appellant.**

No. 28086.

Supreme Court of Idaho, Boise, March 2003 Term.

June 4, 2003.

894

Cynthia Jane Woolley, Hailey, for appellant.

Frederick C. Allington, Hailey, for respondent.

SCHROEDER, Justice.

John Doe appeals the decision of the district court which affirmed the decision of the

magistrate court terminating his parental rights to his minor child.

## I.

## FACTUAL BACKGROUND

John Doe and Jane Doe I were married in January 1993. Shortly after the marriage, John Doe served a six-month prison term for writing bad checks. He was released on parole in August 1993. On November 30, 1993, Jane Doe gave birth to the minor child of herself and John Doe. The Does separated in July 1994. John Doe told his wife that "he didn't want to be raising a family at that point. He wasn't ready."

In September of 1994, John Doe made his first visit to Jane Doe and the minor child since the separation. He was living in Challis. Jane Doe and the minor child were living with her sister in Hailey. Jane Doe asked John for some money. He gave her five dollars. This was the last contact he had with the minor child until November 1996.

Shortly before Christmas in 1994, John spoke with Jane on the phone. He testified that when he spoke with her, she said, "he would not see the child again if he did not come for Christmas." He did not visit the child for Christmas in 1994 because, he says, the pass by which he needed to travel was snowed-in.

After the alleged conversation in December 1994, John testified that he tried to call Jane again, but there was no answer. John testified that he became very depressed, and did not get out of his bed for a month. He quit his job in January of 1995 and hitchhiked from Challis to Helena, Montana, testifying that he went there to see his father. When his parole officer was apprised that he had quit his job and left his apartment, the probation officer spoke with John's roommate, who informed the officer that John had left on January 13 with some of his belongings, hitchhiking to Helena, Montana. The officer asked the roommate to tell John that he needed to speak with him. John returned for the rest of his belongings, and his roommate told him of the officer's desire to speak with him, to which John responded, "Oh well." The district court in Blaine County issued an arrest warrant for John Doe on February 14, 1995, for violations of the terms and conditions of his probation.

After traveling to Montana for a short time, John traveled to Boise, where he stayed with his mother until June of 1995. He went to Oregon to go to an annual fair and see an old friend. While in Oregon, his car was stolen. He hitchhiked to California where he found work and lived with the truck driver with whom he hitchhiked. He testified that he worked three jobs simultaneously in California: for a trucking company, as a chef, and as a night manager for a convenience store. His roommates testified that he would frequently talk of the child and how he missed her. The trial court found that he did miss the minor child and wanted to see her. John testified that his friends in California paid for bus fare to Idaho so he could try to find the minor child. He says he took the trip but was unsuccessful in his efforts to find the minor child. He testified that he felt Jane was deliberately trying to hide their child from him.

On February 16, 1996, Jane Doe obtained a divorce decree by default on the grounds of irreconcilable differences. The decree awarded her sole custody of the minor child, "subject to supervised visitation by [John Doe]. Supervised visitation shall be limited to such times and under such conditions as may be agreed to by [Jane Doe]." In addition, the decree ordered John to pay $200 per month for the care and support of the child.

John Doe did not give monetary contributions for the minor child voluntarily. The only money received for the child from John before the filing of the Petition for Termination in 2000 was in the form of garnishments by the State of Idaho from his social security benefits. The minor child received a total of $2,773 from John from July 1994 to January 2000, all in the form of garnishments from his social security benefits. By the time the petition was filed, John was between $10,000 and $12,000 in arrears on his child support payments. The trial court found that while John was unemployed from 1998 to just before trial, he was fairly steadily employed between 1996 and 1998. He testi-

fied that he was working three jobs simultaneously while in California.

During the summer of 1996 John moved from California to Boise. During that summer he was diagnosed with bipolar disorder. The severity of the condition and effect on his ability to function during all relevant times is in dispute. One of his close friends testified that he thought John was a "normal guy" and did not know he was bipolar until John told him. Another friend testified that most of the time John was not depressed and seemed to be able to function as a normal person. John's witnesses testified that his condition was more severe, often causing him to not the leave the house for several days. The trial court found that his mental condition was not just cause for the failure to contact the minor child.

Jane Doe remarried in September 1996. She eventually had two children by the new marriage. The minor child has lived with her and her new husband since the marriage. Also in September 1996, John was arrested on the warrant issued in Blaine County.

In November of 1996 John called Jane's mother. He testified that it was the first time he was able to speak with her after having tried to contact her at that number for at least two years. John was in Hailey that day for a scheduled arraignment in district court where he was to face charges for absconding. Jane's mother relayed the message to Jane that John wanted to speak with her. Jane promptly called John at the motel in Hailey where he was staying, and the two arranged to meet at a local café. Jane requested that John voluntarily give up his parental rights, which he refused to do. John admits that Jane requested his assurance that if he was not going to give up his parental rights, that he would not "continue popping in and out of [the minor child's] life every three years." He says he agreed with Jane that such infrequent contact was inappropriate. That evening, Jane, the child, and John had a brief visit. Jane gave John her phone number and mailing address.

John's mother initiated contact with the minor child on many occasions. In December 1996, she contacted Jane and arranged for Jane, her new husband, and the minor child to stop by her home on their way to Washington, where they were going for Christmas. The visit took place as planned. John was present and was able to visit with the child. Jane testified that John's mother called her in 1997, 1998, and several times in 1999, and that she allowed his mother to visit the minor child in September 1999.

In April 1997, John called Jane at her place of work when he was in Hailey for another court appearance. He told her that he had a package for the minor child that he wanted to drop off. They met briefly at her work, and he gave her the package. Also, in April 1997, John called and spoke with the minor child on the phone after Easter.

John testified that he has made countless unsuccessful attempts to contact Jane and the minor child by phone and mail. He admits that he never left any messages, but says that he does not like answering machines. Jane testified that—outside of the undisputed contacts already mentioned—she never received any mail, messages on her answering machine, or messages on her caller ID from John. The trial court found the following with respect to John's alleged attempts to contact the minor child:

> The Court ... accepts testimony that if [John Doe] did in fact call, he was calling the wrong number. When and if he did send packages for [the minor child] he was mailing them to the wrong address. There is no adequate explanation for the testimony that he let the phone ring many times on many different occasions and never got an answer. [Jane Doe] has always had an answering machine. By his own explanation, packages that he mailed were mailed to the wrong address. As noted, it would not have been difficult for him to find [Jane Doe] through Social Security. Whenever he in fact wanted to make contact (for example, by calling [Jane Doe's] mother) he was able to do so. When he wanted to make contact because he was being arraigned in Blaine County on his probation violation, he was able to do so. When he wanted to make contact when he came up to Blaine County for sentencing on his probation violation, he was able to do so.

## II.

## PROCEDURAL BACKGROUND

Jane Doe filed a Petition for Termination of Parent and Child Relationship in January 2000. She and her new husband also filed a Petition for Step–Parent Adoption. A magistrate judge held a bench trial in which he granted the Petition for Termination, finding by clear and convincing evidence that John Doe had willfully failed to maintain a normal parental relationship with the minor child, under I.C. § 16–2005(a).

John appealed to the district court, arguing that the magistrate judge's decision was clearly erroneous, that I.C. § 16–2005 is unconstitutionally vague, and that the magistrate judge improperly considered the best interests of the child. The district court affirmed the decision of the magistrate court. John appealed to this Court, designating twenty issues. Some of these overlap in the question of whether there was clear and convincing evidence to support the trial court's findings. When consolidated, the issues to be determined are the following: 1) did the district court err in denying the motion for directed verdict; 2) was it clear error for the trial court to find that there was clear and convincing evidence that John Doe willfully failed to maintain a normal parental relationship, pursuant to I.C. § 16–2005(a); 3) is Idaho Code § 16–2005 unconstitutionally vague or did the trial court's application of that section render it unconstitutional; 4) was the trial court's conclusion of law that John Doe's mental illness was not a defense to termination clear error; 5) were the trial court's findings of fact clearly erroneous; 6) was it clear error for the trial court to find that it was in the child's interest for John Doe's parental rights to be terminated; 7) was it clear error for the trial court to consider expert testimony about whether the child knew John Doe.

## III.

## THE DISTRICT COURT DID NOT ERR IN DENYING JOHN DOE'S MOTION FOR DIRECTED VERDICT

### A. Standard of Review

■ "In determining whether a directed verdict or judgment n.o.v. should have been granted, the appellate court applies the same standard as does the trial court which passed on the motion originally." *Lunders v. Snyder*, 131 Idaho 689, 695, 963 P.2d 372, 378 (1998) (quoting *Quick v. Crane*, 111 Idaho 759, 764, 727 P.2d 1187, 1192 (1986)). In doing so this Court exercises free review and does not defer to the findings of the trial court. *Id.* Therefore, this Court "must determine whether, admitting the truth of the adverse evidence and drawing every legitimate inference most favorably to the opposing party, there exists substantial evidence to justify submitting the case to the jury." *General Auto Parts Co., Inc. v. Genuine Parts Co.*, 132 Idaho 849, 855, 979 P.2d 1207, 1213 (1999) (quoting *Herrick v. Leuzinger*, 127 Idaho 293, 297, 900 P.2d 201, 205 (Ct. App.1995)). "The 'substantial evidence' test does not require the evidence be uncontradicted. It requires only that the evidence be of sufficient quantity and probative value that reasonable minds could conclude that a verdict in favor of the party against whom the motion is made is proper." *Id.* at 855, 979 P.2d at 1213 (quoting *All v. Smith's Mgmt. Corp.*, 109 Idaho 479, 480, 708 P.2d 884, 885 (1985)). Directed verdict is proper, then, "only where the evidence is so clear that all reasonable minds would reach only one conclusion: that the moving party should prevail." *Sheridan v. St. Luke's Reg'l Med. Ctr.*, 135 Idaho 775, 785, 25 P.3d 88, 98 (2001) (quoting *Student Loan Fund of Idaho v. Duerner*, 131 Idaho 45, 51, 951 P.2d 1272, 1278 (1997)).

### B. The district court did not err in denying John Doe's motion for directed verdict.

■ John Doe argues that the district court erred in denying his motion for directed verdict at trial. He asserts that Jane Doe failed during her case in chief to prove by clear and convincing evidence that he willfully failed to maintain a normal parental relationship and that such failure, if any, occurred without just cause for a period of one year.

Idaho Code section 16–2005 establishes the standards by which a court may terminate a

parent-child relationship. The following is the standard for termination on grounds of abandonment:

> The court may grant an order terminating the relationship where it finds one (1) or more of the following conditions exist:
>
> a. The parent has abandoned the child by having willfully failed to maintain a normal parental relationship including, but not limited to, reasonable support or regular personal contact; failure of the parent to maintain this relationship without just cause for a period of one (1) year shall constitute prima facie evidence of abandonment under this section. . . .

I.C. § 16–2005(a).

Substantial evidence existed after Jane presented her case in chief to support her position that John abandoned the minor child. She presented evidence that he had no contact with the minor child for over two years. When she and John separated, he told her that he did not want to be raising a family at that point, that he wasn't ready. She presented evidence that the only support he gave the minor child, aside from an isolated gift of $5, was $2,773 garnished from his social security benefits. This sum, when spread out over the period starting from the separation in 1994 and ending with the Petition for Termination in 2000, would not amount to reasonable support. In addition, the fact that this sum was garnished from his benefits by the State of Idaho, rather than voluntarily given, supports a finding of willfulness. Finally, she provided evidence for lack of just cause by testifying that she did not obstruct his access to the child, showing that every time he contacted her, she allowed visitation of the minor child, and showing that he would have means of contacting her directly or through relatives or work. Jane Doe provided prima facie evidence of abandonment. Substantial evidence supported the magistrate judge's denial of the motion for directed verdict.

■ John contends that Jane could not prove willfulness without having him testify in her case in chief. However, abandonment may be proved by circumstantial evidence. *See Clark v. Jelinek,* 90 Idaho 592, 598–99, 414 P.2d 892, 894–95 (1966) ("Abandonment may be shown by facts and circumstances as well as by direct evidence."); [1] *cf. Weatherhead v. Griffin,* 123 Idaho 697, 702, 851 P.2d 993, 998 (Ct.App.1992) (fraudulent intent may be inferred from circumstantial evidence). Clearly, willful intent is provable by circumstantial evidence.

## IV.

### IT WAS NOT CLEAR ERROR FOR THE TRIAL COURT TO FIND THAT THERE WAS CLEAR AND CONVINCING EVIDENCE THAT MR. DOE WILLFULLY FAILED TO MAINTAIN A "NORMAL PARENTAL RELATIONSHIP," PURSUANT TO I.C. § 16–2005(a)

#### A. Standard of Review

■ The Court has stated the appropriate standard of review for proceedings to terminate a parent-child relationship.

> It is well settled that, in a proceeding to terminate a parent-child relationship, the due process clause mandates that the grounds for termination must be shown by clear and convincing evidence. When the trial court finds that the grounds as defined by statute, which are alleged for termination, are established by clear and convincing evidence, those findings will not be overturned on appeal unless they are clearly erroneous. Clear error, in turn, will not be deemed to exist where the findings are supported by substantial and competent, albeit conflicting, evidence. "It is for the trial court to determine whether clear and convincing evidence supported the termination of parental rights. [This Court's] task on . . . appeal is to determine whether the trial court's finding . . . is clearly erroneous." Furthermore, "in reviewing such findings, this Court will indulge all reasonable inferences in support of the trial court's judgment" when review-

---

1. It should be noted that I.C. § 16–2005(a) did not include the word "willful" in the 1965 version of the statute, which the Court in *Clark* used.

ing an order that parental rights be terminated.

*Doe v. Roe,* 133 Idaho 805, 807, 992 P.2d 1205, 1207 (1999) (quoting *In the Interest of Baby Doe,* 130 Idaho 47, 53, 936 P.2d 690, 696 (Ct.App.1997)). Where the issues presented to the district court in its appellate capacity are the same as those presented to the appellate court, "the appellate court will review the trial record with due regard for, but independently from, the district court's decision." *Id.* at 807–08, 992 P.2d at 1207–08 (quoting *Doe v. State, Dep't of Health & Welfare,* 122 Idaho 644, 645, 837 P.2d 319, 320 (Ct.App.1992)).

**B. There is substantial and competent evidence to support the finding of termination on the grounds of abandonment.**

■ Idaho Code section 16–2005(a) provides that a parent-child relationship may be terminated if the "parent has abandoned the child by having willfully failed to maintain a normal relationship including, but not limited to, reasonable support or regular personal contact." There is substantial evidence to show lack of a normal relationship both by the absence of reasonable support and the absence of regular contact. John Doe failed to voluntarily provide any financial support for the minor child since the separation in 1994. In 1997 through 1998 money was garnished from his social security benefits on behalf of the minor child. However, the amount does not constitute reasonable support. John did give Jane five dollars upon her request for support in September 1994. This negligible contribution, however, does not reflect a sincere desire to support the child and is evidence of willfulness. The record shows that he was employed enough to reasonably expect him to contribute to the support of the minor child. Even when he was not employed, he was receiving social security benefits for at least some period and did not voluntarily distribute some of those benefits to the minor child.

In addition, John failed to have regular contact with the minor child. He did not have any contact between September 1994 and November 1996. His limited contact with the minor child before the Petition for Termination was filed in January 2000 was (1) a visit arranged by Jane's mother in December 1996, (2) a disputed contact in April 1997 at Jane's work, and (3) a call to the minor child in April 1997 at Easter. It is undisputed that between April 1997 and January 2000, he had no contact with the minor child. There is substantial evidence to support the finding that his contact with the minor child between 1994 and 2000 amounted to little more than an hour total. There is more than enough evidence to support the prima facie one-year requirement and substantial and competent evidence to support the trial court's finding of willful failure to maintain a normal parental relationship.

**C. There is substantial and competent evidence to support a finding that Mr. Doe had no valid excuses for the failure to maintain a normal parental relationship.**

■ John offers justifications for any failure on his part to maintain a normal relationship. First, he says that he has a bipolar condition that justifies his lack of contact with the minor child. There is evidence that the condition was extremely debilitating, that periods of depression rendered him non-functional. However, other witnesses testified that his condition did not severely inhibit his ability to function, and that he seemed like a "normal guy." There is conflicting evidence on this point, but there is substantial and competent evidence to support the finding of the trial court that this condition did not provide a justifiable excuse. There is evidence that there was no change in his efforts to establish a normal parent-child relationship after diagnosis and treatment for the condition. There is also evidence that he held employment, married and had another child, though he could not muster the emotional energy to act as a father to the child involved in this case.

John also suggests that his lack of contact was justified because Jane was hiding the child from him. However, she presented evidence that he would have had access to her phone numbers at home or work for much of the time period at issue. Her mother and former in-laws had fairly regular con-

tact with her, and most of the time John knew how to contact these people. He did not inquire of them about the location of the minor child, except his call to Jane's mother in November 1996. While he may not have had an ideal relationship with his mother or former in-laws, if he did not know the location of the minor child, he should have sought that information from these persons. See *Clark v. Jelinek*, 90 Idaho 592, 598, 414 P.2d 892, 894 (1966). Jane also presented evidence showing that every time he sought visitation, she accommodated to his requests. The trial court discredited John's testimony regarding his efforts to contact Jane. There is substantial and competent evidence to support the trial court's determination that John's failure to maintain a normal relationship with the child was without just cause.

### D. The magistrate judge's standard of intent for abandonment was not in error.

John argues that there is no clear and convincing evidence that he had the specific intent to abandon, maintaining that the intent required for abandonment as established in *Moss v. Vest*, 74 Idaho 328, 262 P.2d 116 (1953), has not been met. The Moss case was a habeas corpus proceeding in which the petitioner (the biological mother) sought to regain custody of her minor child. The petitioner had let her mother take the children, because of her marital difficulties, and had traveled to California for four months because she was upset and said she needed to be alone. During that trip the petitioner never inquired about the children. The Court found that the petitioner's absence and lack of contact during her four-month trip did not constitute abandonment. The Court stated, "There can be no abandonment without a specific intent to sever all correlative rights and duties incident to the relationship of parent and child." *Id.* at 334, 262 P.2d at 119–20.

The Court in Moss made no reference to any statutory standard, and a review of the 1948 Idaho Code and its supplements shows that no statute existed at that time addressing termination of parent-child relationships by abandonment. Therefore, the standard in Moss was a common law standard. In 1963, the legislature clearly established the grounds for terminating a parent-child relationship by abandonment. 1963 Idaho Sess. Laws, ch. 145, § 5, p. 423. The 1963 version of I.C. § 2005(a) is the same as the current law except that it did not include the word "willfully" or the sentence addressing termination when sought by a grandparent.[2] These additions were made in 1994. 1994 Idaho Sess. Laws, ch. 427, § 2, p. 1336. The current statutory standard and the common law standard appear to be fairly different. The statutory standard allows termination by abandonment when willful failure to maintain a normal relationship with the child exists, while the common law standard requires specific intent that the parent wanted to sever all parental rights and responsibilities incident to the relationship with the child. In any event, I.C. § 16–2005, which is clear and specific as to the intent necessary to show abandonment, supercedes the common law standard as set forth in Moss.

It should be noted that this Court affirmed the intent for abandonment language from Moss in *Clayton v. Jones*, 91 Idaho 87, 416 P.2d 34 (1966), an adoption case, and *Clark v. Jelinek*, 90 Idaho 592, 414 P.2d 892 (1966), a habeas corpus proceeding by a father to obtain custody from a stepfather. While these cases quote and affirm the specific intent language from Moss, and also cite the then newly-passed I.C. § 16–2005 earlier in other parts of the opinions, it is not clear whether adequate consideration was given to whether Moss should apply after the passage of I.C. § 16–2005.

2. The full text of the relevant part of the law as passed reads:

The court may grant an order terminating the relationship where it finds one or more of the following conditions exist:
a. The parent has abandoned the child by having failed to maintain a normal parental relationship, including but not limited to reasonable support or regular personal contact; failure of the parent to maintain this relationship without just cause for a period of one year shall constitute prima facie evidence of abandonment under this section.
1963 Idaho Sess. Laws, ch. 145, § 5, p. 423.

John also relies on *Clayton v. Jones,* for the proposition that "some" contact with a minor child is enough to preclude a finding of the intent necessary for abandonment. In Clayton, the Court stated that the "appellant did maintain some contact with his minor children, indicative of lack of intent on his part to abandon them within the standards discussed by this court in *Moss v. Vest." Id.* at 91, 416 P.2d at 38. However, there is evidence that John failed to maintain any contact with the minor child for at least a two-year period. Therefore, there is substantial and competent evidence to support the finding of the requisite intent necessary to grant termination on the grounds of abandonment.

## V.

### IDAHO CODE § 16–2005 IS NOT UNCONSTITUTIONALLY VAGUE, AND THE TRIAL COURT'S APPLICATION OF THAT SECTION DOES NOT RENDER IT UNCONSTITUTIONAL

#### A. Standard of Review

The constitutionality of a statute is a question of law, over which this Court exercises de novo review. *State v. Cobb,* 132 Idaho 195, 197, 969 P.2d 244, 246 (1998). The party challenging a statute on constitutional grounds bears the burden of establishing that the statute is unconstitutional and "must overcome a strong presumption of validity." *Olsen v. J.A. Freeman Co.,* 117 Idaho 706, 709, 791 P.2d 1285, 1288 (1990). An appellate court is obligated to seek an interpretation of a statute that will uphold its constitutionality. *Cobb,* 132 Idaho at 197, 969 P.2d at 246. In addition, "a statute should not be held void for uncertainty if any practical interpretation can be given it." *Id.* at 197, 969 P.2d at 246.

#### B. Idaho Code section 16–2005 is constitutional on its face and as applied.

John Doe asserts that I.C. § 16–2005(a) is unconstitutionally vague on its face as well as unconstitutional as applied. "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning, and differ as to its application, violates the first essential of due process of law." *State v. Marek,* 112 Idaho 860, 866, 736 P.2d 1314, 1320 (1987). While more often applied to criminal statutes, the void for vagueness doctrine applies equally to civil statutes. *See Olsen,* 117 Idaho at 716, 791 P.2d at 1295. "However, greater tolerance is permitted when addressing a civil or non-criminal statute as opposed to a criminal statute under the void for vagueness doctrine." *Id.* at 716, 791 P.2d at 1295. If "persons of reasonable intelligence can derive core meaning" from a civil statute, it is not unconstitutionally vague. *Id.*

John argues that the following section of the statute is vague:

> The court may grant an order terminating the relationship where it finds one (1) or more of the following conditions exist:
>
> a. The parent has abandoned the child by having willfully failed to maintain a normal parental relationship including, but not limited to, reasonable support or regular personal contact; failure of the parent to maintain this relationship *without just cause* for a period of one (1) year shall constitute prima facie evidence of abandonment under this section.

I.C. § 16–2005(a) (emphasis added). John argues that the statute is not clear whether the burden is on the petitioning parent to prove the absence of "just cause" or whether it is on the defendant parent to prove "just cause." ,

The language of the statute establishes that the petitioning parent has the burden of proof to come forth with prima facie evidence that the defendant parent is without just cause for not maintaining a normal relationship with the child, which is what the petitioner did in this case. The defendant parent can then come forth with evidence to rebut the prima facie case that there was no just cause. The burden of persuasion remains with the petitioning parent to show, by clear and convincing evidence, willful failure to maintain a normal parental relationship. As long as the trier of fact finds clear and convincing evidence that there are no valid

defenses, or "just causes," then the petitioning parent has met his or her burden of persuasion. The burden on the defendant parent is the burden of production to come forth with evidence supporting defenses to any failure to maintain a normal parental relationship once a prima facie case of abandonment has been established. In support of this interpretation, this Court has held that

> [w]hile I.C. § 16–2005(a) does provide that failure of the parent to maintain the normal parental relationship without just cause for a period of over one year is *prima facie* evidence of abandonment, that section does not place the burden of persuasion upon the parent whose rights are proposed to be terminated. The burden of persuasion of abandonment remains with the petitioner who seeks to terminate the parent-child relationship.

*Maier v. Matthews,* 97 Idaho 99, 104, 540 P.2d 284, 289 (1975). This is consistent with a plain reading of the statute. There is nothing that renders the statute unconstitutional on its face.

■ The statute is also constitutional as applied by the trial court. John Doe argues that the magistrate judge shifted the burden of persuasion to him in violation of his constitutional rights. However, there is no evidence that the magistrate judge applied the statute in an unconstitutional manner. The magistrate judge's decision shows the reverse. The judge specifically found that the intent element was proved by clear and convincing evidence. This finding necessarily implies that Jane Doe also met her burden of persuasion as to proving no "just cause." This reading of the decision is bolstered by the magistrate judge's findings which credited Jane's evidence as to why there was no just cause and discredited John's evidence purportedly illustrating just cause. When the trial court discredited the excuses provided by John, the prima facie case made by Jane Doe became sufficient to meet the burden of persuasion. *See Miller v. Belknap,* 75 Idaho 46, 51, 266 P.2d 662, 665 (1954) ("when the plaintiff has made a prima facie case, the defendant must meet it with countervailing proof or suffer whatever judgment the prima facie proof will support").

## VI.

## THE TRIAL COURT'S CONCLUSION OF LAW THAT JOHN DOE'S MENTAL ILLNESS WAS NOT A DEFENSE TO TERMINATION WAS NOT CLEAR ERROR

### A. The alternative holding did not violate Mr. Doe's due process rights.

■ John Doe argues that the magistrate judge implicitly found grounds for termination on the alternative basis of mental illness, for which John says he had no notice in violation of his due process rights. The magistrate found that termination was justified on the basis of abandonment. That finding is supported by the evidence. Any consideration of mental illness as that ground for termination existed in the statute at the time this action was tried would not change the outcome. Even if considered, there was no due process violation. In *Dayley v. State, Dep't of Health & Welfare,* 112 Idaho 522, 733 P.2d 743 (1987), the appellant argued that the state's petition seeking termination constituted an insufficient pleading in violation of his due process rights, because the state had not specified which of the six grounds for termination of parental rights set forth in I.C. § 16–2005 the state was alleging. The Court held that the state provided adequate notice that it was seeking to terminate his parental rights: "It was not necessary that the state allege precisely which of the six subsections of I.C. § 16–2005 under which it was proceeding. A simple and concise statement of facts is all that is necessary." *Id.* at 525, 733 P.2d at 746. In this case John Doe likewise received adequate notice that Jane Doe sought to terminate his parental rights. He placed his mental condition in issue with extensive evidence. There could be no surprise that there was comment upon his mental condition. His due process rights were not violated.

### B. The magistrate judge did not err in not appointing Mr. Doe a guardian ad litem.

■ John argues that because the magistrate judge alternatively held that

there were grounds for abandonment under I.C. § 16–2005(d), that it was clear error not to appoint him a guardian ad litem. At the time of trial, Idaho Code section 16–2007 provided in relevant part:

> When the termination of the parent and child relationship is sought under section 16–2005 d., Idaho Code, the court shall appoint a guardian ad litem for the alleged incompetent parent. The court may in any other case appoint a guardian ad litem, as may be deemed necessary or desirable, for any party.

I.C. § 16–2007 (2001). A 2002 amendment changed this language to provide that a guardian ad litem shall be appointed not specifically when termination is sought under section 16–2005(d), but rather when "the parent is determined to be incompetent to participate in the proceeding." 2002 Idaho Sess. Laws, ch. 233, § 11, p. 666.[3] A guardian ad litem was not required under the version of the statute at the time of trial because termination was not "sought" under I.C. § 16–2005(d). Jane Doe pled termination under I.C. § 16–2005(a) and (e) in her Petition for Termination. Therefore, a guardian ad litem was not required under the statute. Second, the magistrate judge clearly found first that termination was proper on the grounds of abandonment before making its alternative finding on grounds of mental illness. Furthermore, a defendant parent may have a mental illness or deficiency and still be competent for purposes of the proceeding such that a guardian ad litem is not necessary. The magistrate judge never found that John was incompetent for purposes of the proceeding. There is nothing in the record that suggests he was incompetent for purposes of the proceeding.

3. The statute now reads in relevant part: "When the termination of the parent and child relationship is sought and the parent is determined to be incompetent to participate in the proceeding, the court shall appoint a guardian ad litem for the alleged incompetent parent. The court may in any other case appoint a guardian ad litem, as may be deemed necessary or desirable, for any party."

4. In 2002, the legislature created I.C. § 16–2005(i) which provides the following:

## C. The magistrate judge's finding that mental illness was not a defense was not clearly erroneous.

█ John argues that it was clear error for the magistrate judge not to consider evidence regarding his mental illness. He presented considerable evidence at trial regarding his mental illness, its severity and its impact on his ability to function. The trial court was presented with conflicting evidence on this issue and held that the mental illness did not so disable John that he could not discharge his parental responsibilities. The magistrate judge's finding is supported by substantial and competent evidence.

█ Relevant to this argument, John contends that he should have been allowed to present evidence of how support services ameliorate the effects of his mental disability as set forth in a 2002 amendment to I.C. § 2005.[4] He did present evidence of how his treatment and new wife and family have stabilized his life. Regardless, his efforts to maintain a parental relationship with the minor child did not change significantly. In any event, there is no basis to apply this new section retroactively.

John also argues that the magistrate judge was in error in finding that mental illness could not be a defense in a termination proceeding. However, the magistrate judge held that if the mental illness did rise to the level of a defense, which he did not believe it did, then it would also support a finding of abandonment based on the mental illness of Mr. Doe, under I.C. § 16–2005(d) as it existed at the time of trial. It is clear the trial court allowed and considered John's mental state but did not find that it established just

If the parent has a disability, as defined in this chapter, the parent shall have the right to provide evidence to the court regarding the manner in which the use of adaptive equipment or supportive services will enable the parent to carry out the responsibilities of parenting the child. Nothing in this section shall be construed to create any new or additional obligation on state or local governments to purchase or provide adaptive equipment or supportive services for parents with disabilities.

2002 Idaho Sess. Laws, ch. 233, § 10.

cause for the abandonment. The alternative finding is not relevant.

## VII.

### THE TRIAL COURT'S FINDINGS OF FACT ARE NOT CLEARLY ERRONEOUS

#### A. Standard of Review

 This Court will not set aside findings of fact unless they are clearly erroneous. I.R.C.P. 52(a); *Halen v. State,* 136 Idaho 829, 832, 41 P.3d 257, 260 (2002). If the trial court's findings of fact are based upon substantial and competent, although conflicting evidence, they should not be disturbed on appeal. *Id.* at 832, 41 P.3d at 260. "Evidence is substantial if a reasonable trier of fact would accept and rely upon it in determining whether a disputed point of fact has been proven." *Weaver v. Millard,* 120 Idaho 692, 698, 819 P.2d 110, 116 (Ct.App.1991). Additionally, this Court gives due regard to the trial judge's special opportunity to judge the credibility of the witnesses. I.R.C.P. 52(a); *Marshall v. Blair,* 130 Idaho 675, 679, 946 P.2d 975, 979 (1997). This Court will liberally construe the trial court's findings of fact in favor of the judgment entered. *Sun Valley Shamrock Res., Inc. v. Travelers Leasing Corp.,* 118 Idaho 116, 118, 794 P.2d 1389, 1391 (1990). Even if a finding of fact is in error, this Court should disregard such error unless it affects the substantial rights of the parties. I.R.C.P. 61.

 This Court, however, exercises free review over the trial court's conclusions of law to determine if the trial court correctly stated the principles of law and if the legal conclusions are supported by the facts as found. *Nampa & Meridian Irrigation Dist. v. Washington Fed. Sav.,* 135 Idaho 518, 521, 20 P.3d 702, 705 (2001). The Court is "free to draw its own conclusions from the facts presented." *Kootenai Elec. Coop. v. Washington Water Power Co.,* 127 Idaho 432, 435, 901 P.2d 1333, 1336 (1995).

#### B. The findings of fact are not clearly erroneous, and any errors are harmless.

John claims that many of the magistrate judge's findings of fact were clearly errone-

ous, warranting reversal. First, he asserts that the trial court should have considered his subjective belief that Jane Doe was trying to obstruct his access to the minor child. However, the trial court did hear much evidence presented by John as to his purported subjective belief. Jane also presented evidence that she did not threaten to hide the child from him, and indeed showed that whenever she was contacted she allowed visitation. The trial court simply did not believe John Doe. The magistrate judge found "absolutely nothing in the evidence or testimony which shows in any fashion any effort by [Jane Doe and her new husband] to exclude [John Doe] from [the minor child's] life, or conceal [the minor child's] whereabouts, or to attempt to dissuade John Doe from visiting [the minor child]." This finding is supported by substantial and competent evidence.

 Second, he argues that it was clear error to find that he could have obtained Jane Doe's address from the Social Security Administration. He introduced reports from the Social Security Administration which respond to his purported requests for information. The page listing others to whom his benefits are sent lists the name of Jane Doe and the name of the minor child, but the address of Jane Doe is blacked out with a marker. John testified that he had asked the Social Security Administration to make the payments to Jane Doe for the minor child, which the trial court did not believe as he also testified that he did not have the correct spelling of her married name or address, so the administration would not have known where to send it if he were telling the truth. The report has the correct spelling of her married name. Perhaps the trial court simply did not believe that the administration had blacked out the address. In any event, if this was a clear error, it was harmless as there is evidence that John could have obtained the address from other sources besides social security.

 Third, John argues that the absence of a finding that Jane Doe gave him an ultimatum in December 1994 that if he did not come for Christmas he would never see

the child again was clear error. Such a finding would relate to his defense that she was hiding the minor child from him. It is true that a trial court will be reversed if it "fails to find on all of the material issues, ... unless a finding thereon either for or against the successful party would not affect the judgment entered." *Wood v. Broderson,* 12 Idaho 190, 198, 85 P. 490, 491 (1906). This rule also applies to material issues raised by affirmative defenses. *Id.* at 198, 85 P. at 491. While the trial court did not address the specific alleged conversation, the court addressed the defense that the alleged conversation raises, namely that Jane Doe was obstructing John's access to the minor child. In its conclusions of law, the court stated, "[Jane Doe and her new husband] have made no efforts to deny [John Doe] visitation, and in fact have accommodated visitation whenever contacted by [John Doe] or even his mother." There is substantial evidence to support this finding.

Fourth, John alleges that the finding that he willfully abandoned his daughter is in error given that the trial court found that he was unknowingly calling the wrong number and sending mail to the wrong address. This argument mischaracterizes the finding by the trial court. It found that "if [John Doe] did in fact call, he called the wrong number. When and if he did send packages for [the minor child] he was mailing them to the wrong address." This finding does not concede that John Doe attempted much contact, if at all. It also must be read in the context of other findings that John Doe could have obtained the correct contact information if he so desired. These findings are not in irresolvable conflict, and there is still substantial and competent evidence supporting the overall findings of abandonment.

Fifth, John Doe says that it was error to find that whenever he wanted to make contact with the child, he was able to do so. While there is conflicting evidence on this point, there is substantial evidence to support this finding.

Sixth, he says that it was clear error to find that he could have left a message with Jane Doe or could have called her mother. Again, while there is conflicting evidence, there is substantial and competent evidence to support this finding.

Seventh, he says that it was clear error to find that Jane Doe's move from Ketchum to Bellevue occurred in June 1996 and August 1996, and that he therefore must have had her Bellevue number, as these findings were inconsistent. He refers to several findings. Finding of Fact No. 48 states, "[John Doe] called in April of 1997 and spoke with [the minor child] after Easter, so, he had [Jane Doe and her new husband's] number." John Doe also contends with two different dates given for the move by Jane and her new husband from Ketchum to Bellevue in findings of fact 10 and 47. However, John Doe certainly must have had the number to one of her residences for some length of time if he called her. There is some conflict as to the evidence on this point, but it is harmless. The inconsistency of dates for her move, a difference of two months, is harmless.

Eighth, John Doe argues that it was clearly erroneous to find that he has seen his daughter for only one hour since her birth when the court also found that he lived with the child for at least one year after she was born. The trial court stated in its second conclusion of law that "[s]ince her birth in 1993, [the minor child] has seen [John Doe] and been in his presence for approximately one hour." This conclusion of law appears to be clearly erroneous. It seems undisputed that he lived with Jane and the minor child between November 30, 1993, and their separation in July 1994. However, the first year of the minor child's life is not at issue. The obvious period at issue is the contact between him and the minor child from the parents' separation in July 1994 to the filing of the Petition for Termination in January 2000. There is some conflict in the record, but there is substantial and competent evidence to support a finding that the contact during that period approximated one hour. The error regarding contact during the first year of the minor child's life is harmless error as there is substantial additional evidence to satisfy the requirements for abandonment after that time.

Ninth, he argues that it was clear error to find that he did not have excuses for no contact with the child for six years when the trial court found that he either had contact with her during four of those years and made attempts to contact her during the others. There is substantial and competent evidence to support the magistrate judge's finding that John Doe did not have valid excuses for failing to maintain a normal parental relationship with the minor child.

Finally, he argues that the trial court was in clear error in finding that once he established contact in November and December of 1996, he promptly ceased further communication. There is substantial and competent evidence to support this finding.

## VIII.

### THE BEST INTERESTS OF THE CHILD

 John Doe argued before the district court that the best interests of the child should not be considered. He asserted that the ground for termination was abandonment, not the best interests of the child under section 16–2005(e). This issue is raised on appeal without any argument or citation to authority. "A party waives an issue cited on appeal if either authority or argument is lacking." *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). Both argument and authority are lacking on this issue. This issue is waived.

## IX.

### THE ISSUE OF WHETHER IT WAS CLEAR ERROR FOR THE TRIAL COURT TO CONSIDER EXPERT TESTIMONY ABOUT WHETHER THE CHILD KNEW JOHN DOE WHEN HE WAS NEVER EVALUATED BY THAT EXPERT OR IN THE PRESENCE OF HIS DAUGHTER WAS WAIVED

**A. This issue was waived.**

John Doe maintains, without discussion or legal support, that the trial court should not have considered expert testimony regarding whether the minor child knew him when the expert did not evaluate him or evaluate the minor child in his presence. "A party waives an issue cited on appeal if either authority or argument is lacking." *Zichko*, 129 Idaho at 263, 923 P.2d at 970. Both argument and authority are lacking on this issue. The issue was waived.

## X.

### CONCLUSION

The trial court's decision to terminate Mr. Doe's parental rights is affirmed. Jane Doe is awarded costs.

Chief Justice TROUT, Justices WALTERS, KIDWELL and EISMANN concur.