**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 41978**

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENTAL RIGHTS OF JANE (2014-08) DOE. | 2014 Unpublished Opinion No. 670 |
| | Filed: August 14, 2014 |
| | Stephen W. Kenyon, Clerk |
| IDAHO DEPARTMENT OF HEALTH & WELFARE, | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY |
| Petitioner-Respondent, | |
| v. | |
| JANE (2014-08) DOE, | |
| Respondent-Appellant. | |

Appeal from the Magistrate Division of the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. A. Lynne Krogh, Magistrate.

Decree terminating parental rights, affirmed.

Mimura Law Offices, LLC; William Jacobson, Caldwell, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Brent R. King, Deputy Attorney General, Caldwell, for respondent. Brent R. King argued.

GUTIERREZ, Chief Judge

Jane Doe appeals from the magistrate's decree terminating her parental rights to her six children. Specifically, she contends the magistrate erred by not making a finding as to whether the Idaho Department of Health and Welfare (the Department) engaged in reasonable efforts toward reunification and by determining that Doe neglected her children and that termination was in the best interests of the children. For the reasons set forth below, we affirm.

1

# I.

## FACTS AND PROCEDURE

The subjects of these proceedings are Doe's six children: M.Y.G., born in 2001; F.J.G., born in 2003; M.A.G., born in 2005; A.N.G., born in 2008; D.G., born in 2009; and E.G., born in 2010.

### A.     Removal of the Children

On May 25, 2012, an officer arrived at Doe's residence to conduct a safety check in response to a report that the children, ranging in age from under two years old to eleven years old, had been left unattended all day. The home was extremely dirty, had debris strewn throughout, and smelled of urine, feces, and rotting food. There was no running water and little food or sanitation products in the house. The officers observed exposed wiring in the bathroom, broken windows patched with duct tape, and steep, narrow stairs to the basement with no safety gate. The children and their clothes were dirty and grimy. It was later discovered that the children had head lice and the younger children had flea bites on their necks. The two youngest children had several rotting teeth that required extensive dental care.

Doe gave conflicting stories as to who had been supervising the children. The responding officer concluded the children had been subjected to long-term neglect and that due to safety issues, the children were in imminent danger. The children were transferred to the custody of the Department. Doe was arrested on six counts of misdemeanor injury to a child.

On May 29, 2012, the Department filed a petition alleging the children came under the jurisdiction of the Child Protective Act (CPA), Idaho Code § 16-1601 *et seq*. The next day, the magistrate held a shelter care hearing where the parties stipulated to the entry of an order placing the children in shelter care. A shelter care order was entered on June 13, 2012. On July 11, 2012, the court held an adjudicatory hearing where the parties stipulated that the children came within the purview of the CPA on the basis that they lacked a stable home environment, and stipulated to the placement of the children in the custody of the Department.

### B.     Case Plan

On August 8, 2012, a case plan hearing was held. On August 23, 2012, the court entered an order approving an amended case plan which focused on four areas of parenting deficiencies, each of which contained tasks designed for Doe to correct those deficiencies. The first was Doe's lack of parental supervision and failure to provide a safe and stable home environment.

The tasks assigned included obtaining employment and safe housing, attending her children's medical appointments and contacting their mental health providers, completing a Protective Parenting class, completing Family Preservation Services upon reunification with her children, and demonstrating protective parenting skills during interactions with her children. The second and third areas of concern were Doe's substance abuse and mental health issues, the latter of which included the fact that several of the children had been in foster care on two prior occasions due to Doe's substance abuse and a hazardous home environment.[1] Doe was directed to complete a drug and alcohol assessment and psychological examination, follow all recommendations, submit to random drug tests, complete an anger management program, and demonstrate the ability to manage her anger and to protect her children and meet their needs. Finally, the case plan identified Doe's pending charges of six counts of injury to a child and felony burglary as a concern and she was tasked with resolving those issues and complying with the terms of her sentencing.

A caseworker from the Department engaged in monthly meetings and phone calls with Doe, following up on the requirements of the case plan. In regard to the task that Doe was to obtain and maintain legitimate employment and income and provide the Department with verification, Doe did report working at several different employers, but only provided verification for approximately three months of employment. When the Department identified transportation as a barrier to Doe obtaining employment, it provided her with bus passes and gas vouchers. When Doe's driver's license suspension expired, she did not obtain a new license due to the prohibitive costs of obtaining insurance. Doe was not employed at the time of the

---

[1]    In addition to the six children at issue in this case, Doe had another child, G.G., born in 2004 with methamphetamine in his system. G.G. was declared in imminent danger and Doe's other children residing in the home at the time, M.Y.G. and F.J.G., were also taken into Department custody. Doe satisfactorily completed the ordered case plan and the children were returned home after spending approximately nine months in foster care.

In 2006, G.G. was again removed from Doe's home due to his failure to thrive. Doe agreed to termination of her parental rights to G.G., testifying she did so out of fear that her other children would be taken from her if she did not.

In 2007 or 2008, M.Y.G., F.J.G., and M.A.G., were removed from Doe's home due to a hazardous living environment, which included no running water, the toilet being full of waste, animal feces in the home, and the children reporting they had not eaten. Doe was arrested at the scene, but again satisfactorily completed her case plan and the children were returned to her after approximately a year in foster care.

termination trial, but was attending a class on job searching in order to maintain her food stamp benefits.

Regarding the requirement that she obtain and maintain suitable housing, during the time her children were in foster care, Doe lived some of the time with her mother. The Department identified this residence as not being a safe environment for the children given, among other things, the condition of the home, the criminal and child protection history of Doe's mother, and the criminal history of several other residents. Doe did obtain suitable housing for a period, but subsequently lost it due to an inability to pay the rent. Doe was directed to housing assistance resources, but at the time of the trial, she still did not have stable housing for her children.

Doe was also tasked with being involved in her children's medical and mental health care. Although she was provided with contact information for the four oldest children's counselors and was regularly reminded to contact them, she did not do so until the fall of 2013. Doe never completed Family Preservation Services (where the provider works with the children and parent in the home) because visitation between her and her children never progressed beyond supervised visitation. In regard to the Protective Parenting class, Doe attended, but did not initially successfully complete the class because, in part, she did not complete a required safety plan. In December 2013, Doe successfully completed the class.

The magistrate found there were significant deficiencies concerning the requirement that Doe demonstrate protective parenting skills, largely in regard to visitation with her children. After the adjudicatory hearing, the Department arranged for Doe to have supervised visits with her children at a local park. During the first visit, Doe made a threatening comment to the guardian ad litem within earshot of the children. During the second visit, Doe angrily yelled and swore at the visitation supervisor, after which community visits were terminated. Doe consistently attended supervised weekly visits with her children at the Department's offices, but a number of problems occurred, including Doe's persistence in talking to the children about when they would be returning home despite repeatedly being told not to (including by the magistrate during a review hearing), Doe's interaction with her oldest daughter as a peer and M.Y.G.'s "parentized" behavior in attempting to parent not only the younger children but Doe as well, and Doe's inability to set boundaries for the children and engage with them in constructive activity. Doe also responded with hostility and defiance to the visitation supervisor and/or

4

caseworker who would attempt to guide her as to appropriate behavior during visits, and Doe often expressed herself with profanity and violent language in front of the children.

In October 2013, there was a significant change in Doe's behavior--she became less hostile and more open to the suggestions of Department personnel and began to more constructively engage with her children. Nonetheless, significant problems continued which prevented the Department from proceeding to unsupervised visits, the typical next step. The primary issue was that as long as Doe and the children were physically contained within the walls of a single room, Doe was able to supervise the children; however, once they were outside the room, she was unable to set boundaries, including those necessary for their safety. Despite repeated instruction and modeling of behavior, the visitation supervisor and/or caseworker continued to have to intervene to stop the children from running into traffic outside the building, concerns which continued during visitations occurring up until the time of trial.

Doe's caseworker testified that due to Doe's resistant attitude, the caseworker continued to try to engage with Doe on an individual level as opposed to sending her to parenting classes. The caseworker indicated the plan was for further parenting education classes to be provided to the family in the home through Family Preservation Services once the children were returned, but that Family Preservation Services refused to work with Doe due to threats of violence that occurred during the initial community visits. The caseworker continued to work with Doe and Family Preservation Services in the hope that Doe would become more amenable to parenting education and Family Preservation Services would agree to work with her, which finally occurred in October 2013.

Regarding the second area of concern identified by the case plan, Doe's history of substance abuse that has impacted her ability to parent, Doe did complete a drug and alcohol assessment/evaluation in the summer of 2012, but denied having used drugs for a considerable period--an assertion she later admitted was not true--and was not referred for further treatment. After Doe admitted to a caseworker in October 2012 that she had recently used methamphetamine and marijuana, she underwent another evaluation and was referred for substance abuse treatment, which she successfully completed in September 2013. During the time her children were in foster care, Doe signed several admissions of substance abuse forms provided by her probation officer, admitting to using drugs on approximately five occasions between October 2012 and January 2013. Since the spring of 2013, however, Doe had thirty-one

5

negative drug tests, along with five no-shows which may have occurred during the period she was in jail for a probation violation. She testified at the termination trial that she had not taken drugs since March 2013.

Pertaining to the mental health area of concern in the case plan, Doe underwent a psychological examination in the summer of 2012. The evaluator noted her difficult and often violent upbringing and reported concerns with depressed mood, attention deficient hyperactivity disorder, and post-traumatic stress disorder. The examiner stated that Doe met the criteria for intermittent explosive disorder and antisocial personality disorder, that she took little responsibility for the circumstances that brought her children into the custody of the Department, and that she "does not believe there are any changes that she needs to make in her parenting, is harsh with the children, and appears to have little empathy for them." The evaluator indicated her anti-social personality patterns "appeared pervasive and inflexible, and would be extremely difficult to successfully treat" and her mental health was a significant risk factor for future parenting. He further indicated Doe reported some methamphetamine use but only a few instances since 2004 when her third child was born. The evaluator recommended various mental health treatments, but as the evaluator predicted, Doe was "actively resistant to treatment" and did not access mental health services provided to her until sometime after March 2013. Doe attended six counseling sessions, but when offered more she declined, saying she had done what was required. She also declined to take medication. She began attending anger management counseling, but stopped before the course was complete.

In October 2013, Doe was referred for another psychological evaluation to determine whether her psychological functioning had changed since the previous evaluation. At this point, Doe was attending drug treatment and acknowledged to the evaluator that she had been using methamphetamine at the time the first psychological examination was conducted. Doe stated she had been drug-free for approximately six months. The evaluator stated that Doe's participation in mental health counseling and drug treatment was a significant step for her, but that she was resistant to further counseling and treatment and her remaining substantial issues with depression and post-traumatic stress would "continue to impact her stability, her sobriety, and her ability to parent her children." The evaluator reported that Doe had made progress in controlling her anger and no longer met the criteria for intermittent explosive disorder, noting this improvement coincided with her abstinence from using methamphetamine. The evaluator stated, however, that

6

Doe did not "demonstrate much insight into her addiction, did not have a realistic plan for maintaining her sobriety, was at a high risk of relapse, and there was no way to predict whether the sobriety and the improvement in anger management would continue."[2]  Finally, the evaluator reported that Doe showed greater insight into her parenting and her children's needs and took greater responsibility for her actions than in the previous evaluation, but indicated that Doe continued to give excuses and explanations for her poor parenting decisions and did not have a realistic plan for how she was going to provide a stable home for the children in the future.  The evaluator concluded the improvement Doe had shown would not enable her to adequately parent the children in the near future.

In regard to the final area of concern identified in the case plan, Doe's pending criminal charges, Doe apparently spent some time in jail on the burglary charge in the late summer or early fall of 2012.  Pursuant to a plea agreement, Doe pled guilty to four counts of misdemeanor injury to a child in exchange for dismissal of the other two counts and was placed on misdemeanor probation.  Doe spent time in jail on at least two other occasions while her children were in foster care, the last time in the fall of 2013 for a probation violation.  While her children were in foster care, Doe committed and was convicted of several additional misdemeanor offenses, including disturbing the peace, driving without insurance and driving while suspended, and was on felony probation for the burglary conviction at the time of the termination trial.

C.    Termination Proceedings

On August 8, 2013, the Department filed a petition to terminate Doe's parental rights as to her six children.[3]  The petition sought termination on the basis that it was in the best interests of the children, Doe failed to comply with the court's orders or the case plan, and reunification had not occurred within the time standards set forth in section 16-1629(9); that the children were neglected as defined by section 16-2002(3); and that Doe was unable to discharge her parental

---

[2]    The magistrate noted that when Doe testified at the termination trial, she continued to minimize the extent of her drug use, attributing it to the removal of her children, and stated that her plan for maintaining her sobriety was simply the statement that she would not use drugs.

[3]    The petition also sought to terminate the parental rights of the children's three different fathers.  At the time the magistrate issued its decision and order terminating Doe's parental rights, the magistrate noted that two of the fathers' parental rights had been terminated in October 2013, but the petition to terminate the parental rights of one of the fathers remained pending due to lack of service.

responsibilities and such inability would continue for a prolonged indeterminate period and would be injurious to the health, morals, or well-being of the children. Doe filed an answer on September 10, 2013. A termination trial was held on various days between January 7 and January 20, 2014. The magistrate issued a memorandum decision and order granting the petition for termination on March 17, 2014, and a decree terminating Doe's parental rights was issued on March 28, 2014. This appeal followed.

**II.**

**ANALYSIS**

Doe contends the magistrate erred by determining it need not make a finding that the Department engaged in "reasonable efforts" toward reunification in order to terminate Doe's parental rights. She also contends there was not clear and convincing evidence to support the two bases on which the magistrate found that Doe neglected her children and that it was in the best interests of the children that Doe's parental rights be terminated.

The United States Supreme Court has held that a parent's interest in maintaining a relationship with his or her child is a fundamental liberty interest protected by the Fourteenth Amendment to the United States Constitution. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Quilloin v. Walcott*, 434 U.S. 246, 254-55 (1978). The CPA directs that "the state of Idaho shall, to the fullest extent possible, seek to preserve, protect, enhance and reunite the family relationship." Idaho Code § 16-1601. Likewise, the Termination of Parent and Child Relationship Act states, "Implicit in this chapter is the philosophy that wherever possible family life should be strengthened and preserved . . . ." I.C. § 16-2001(2).

Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by "clear and convincing evidence." *Santosky*, 455 U.S. at 769. *See also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245, 220 P.3d 1062, 1064 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order terminating parental rights. *Id*. at 245-46, 220 P.3d at 1064-65. The Idaho Supreme Court

8

has also stated, however, that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence, than in cases where a mere preponderance is required. *In re Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the trial court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600. In our review of the record, this Court will not set aside a magistrate's findings of fact unless they are clearly erroneous. Idaho Rule of Civil Procedure 52(a); *Doe I v. Doe*, 138 Idaho 893, 906, 71 P.3d 1040, 1053 (2003). Giving due regard to the trial judge's opportunity to assess the credibility of the witnesses, we will liberally construe the trial court's findings of fact in favor of the judgment entered. *Doe I*, 138 Idaho at 906, 71 P.3d at 1053. Even if a finding of fact is in error, this Court should disregard such error unless it affects the substantial rights of the parties. I.R.C.P. 61.

Idaho Code § 16-2005 permits the Department to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of five factors exist, including neglect or abuse. Each statutory ground is an independent basis for termination. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007).

## A.     Reasonable Efforts

Doe contends the magistrate erred by failing to make a finding as to whether the Department made reasonable efforts to return the children to their home. Specifically, she objects to the magistrate's specific finding that the question of whether the Department made reasonable efforts for unification is not an element of the termination statute and need not be considered when a court is determining whether to terminate parental rights.

In support of her argument that such a finding is necessary, Doe contends the purpose statements of the termination statutes, I.C. § 16-2001, and the Child Protective Act (CPA), I.C. § 16-1601, place a burden on the Department to seek reunification, and therefore, whether the Department made reasonable efforts must be explicitly considered in a court's termination decision. The Idaho Supreme Court, however, recently made clear that such a finding is not required:

> We note that the CPA contemplates that the Department will make reasonable efforts at reunification during the pendency of CPA proceedings. However, whether the Department has made reasonable efforts at reunification is

9

*not part* of the magistrate court's analysis when terminating parental rights on the grounds of neglect. *See* I.C. § 16-2002(3)(b)[].

*In re Doe*, ___ Idaho ___, ___ n.3, ___ P.3d ___, ___ n.3 (Aug. 1, 2014) (remittitur pending) (emphasis added).[4] *See also Idaho Dep't of Health & Welfare v. Doe*, 151 Idaho 498, 506, 260 P.3d 1169, 1177 (2011) ("[T]he purpose provision in the termination statute is not a source of specific substantive criteria for termination[.]"). Accordingly, the magistrate was not required to make an explicit finding at the termination stage as to whether the Department engaged in reasonable efforts toward reunification.

## B. Neglect

Doe contends there is not clear and convincing evidence to support the magistrate's determination that she neglected her children. Section 16-2002(3) defines "neglect" in two ways. The first is conduct defined in I.C. § 16-1602(28),[5] which defines "neglected," in pertinent part, as a child:

---

[4]    The Court further noted:

Where the Department's efforts at reunification are substandard, this should be addressed during the CPA proceedings by motion or argument to the court under I.C. § 16-1622(2)(g)(iii), which provides:

> If the child has been in the temporary or legal custody of the department for fifteen (15) of the most recent twenty-two (22) months, the department shall file, prior to the last day of the fifteenth month, a petition to terminate parental rights, unless the court finds that:
>
> . . . .
> (iii) The department has failed to provide reasonable efforts to reunify the child with his family.

*In re Doe*, ___ Idaho ___, ___ n.3, ___ P.3d ___, ___ n.3 (Aug. 1, 2014) (remittitur pending).
    In addition, we note that a magistrate is explicitly required to make a finding of reasonable efforts at numerous earlier stages of the proceedings, including the shelter care hearing, Idaho Code § 16-1615(5)(b); the adjudicatory hearing, I.C. § 16-1619(6); the case plan hearing, I.C. § 16-1621(3); and the permanency hearing, I.C. 16-1622(2)(c). Thus, by the time termination proceedings are instigated, the magistrate has repeatedly been tasked with determining whether the Department engaged in reasonable efforts.

[5]    At the time the magistrate issued its memorandum decision and order granting the petition for termination in this case, neglect was defined in section 16-1602(26). As of July 1, 2014, this subsection was renumbered to subsection (28), but was not substantively altered.

10

(a) Who is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents . . . or their neglect or refusal to provide them . . .; or

(b) Whose parents . . . are unable to discharge their responsibilities to and for the child and, as a result of such inability, the child lacks the parental care necessary for his health, safety or well-being . . . .

Second, a child is considered neglected in situations where:

The parent(s) has failed to comply with the court's orders or the case plan in a child protective act case and:

(i) The department has had temporary or legal custody of the child for fifteen (15) of the most recent twenty-two (22) months; and

(ii) Reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the department.

I.C. § 16-2002(3)(b).

The magistrate determined that Doe neglected her children under both section 16-1602(28)(a) and section 16-2002(3)(b). Doe challenges both grounds on appeal. In regard to the latter basis, Doe contends that the proper timeline was not observed. As the Department points out, however, Doe's argument is premised on the previous version of the statute. In 2013, section 16-2002(3)(b) was amended as excerpted above. As of the issuance of the magistrate's order terminating Doe's parental rights, the children had been in the Department's custody for twenty-two months; thus, it is uncontested that reunification did not occur by the end of the fifteenth month as provided in subsection (ii) and there was substantial, competent evidence to support the magistrate's finding.[6]

Doe also contends there was not substantial and competent evidence to support the finding of the magistrate court that she is "unable to discharge her parental responsibilities and any such inability will continue for a prolonged period of time and will be injurious to the health, morals or well-being of the children." Specifically, she points out the significant improvements she began to make around October 2013, as both the guardian ad litem and the Department's visitation supervisor testified. However, although this was a basis of the Department's petition to terminate her parental rights, and such a finding is an *alternate* ground for termination in

---

[6] Doe does not challenge the magistrate's associated finding pursuant to section 16-2002(3)(b) that she "failed to comply with the court's orders or the case plan in a child protective act case," and thus we do not address it.

11

section 16-2005 (in concert with a finding that termination is in the best interests of the child), the magistrate did not make or rely on such a finding in this case. Rather, the magistrate relied exclusively on its findings that Doe neglected her children as defined in sections 16-1602(28) and 16-2002(3)(b). Thus, we do not address the issue further as we cannot review a finding the magistrate did not make. To the extent Doe believes the magistrate erred by not adequately taking into consideration her progress, we address that contention below.

## C.     Best Interests of the Children

Doe also contests the magistrate's finding that termination of her parental rights was in the best interests of the children. Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interest, the trial court may consider the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). *See also Doe v. Roe*, 133 Idaho 805, 809-10, 992 P.2d 1205, 1209-10 (1999); *Doe v. Dep't of Health & Welfare*, 122 Idaho 644, 648, 837 P.2d 319, 323 (Ct. App. 1992). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds, supported by substantial and competent evidence. *In re Doe*, 152 Idaho 953, 957, 277 P.3d 400, 404 (Ct. App. 2012).

Doe's primary complaint in regard to the magistrate's best interests finding is the Department's alleged speed in seeking termination which, she claims, deprived her of a fair opportunity to reunify with her children. Specifically, she points to the guardian ad litem's assertion, within only twenty days of the children entering shelter care, that termination was in the best interests of the children. Doe characterizes this opinion as a disregard of the guardian ad litem's legal obligation to work toward reunification and an exhibition of bias that the magistrate should have taken into account when considering the reasonable efforts of the Department toward rehabilitation. Doe cites to *Idaho Dep't of Health & Welfare v. Doe*, 149 Idaho 59, 66, 232 P.3d 837, 844 (Ct. App. 2010), where the court commented on the speed of proceedings in some circumstances:

> [T]he speed within which the Department sought termination of Doe's rights with just five months elapsing between the Department's taking custody of [the child] and its designation of termination as the primary plan, and eight months between [the child] entering custody and the Department filing a petition for termination--would weigh against termination in view of the fundamental right at stake and the legislative policy, expressed in I.C. § 16-1601, that the Department, 'to the fullest extent possible, seek to preserve, protect, enhance and reunite the family relationship.'

*Id*.

This is simply not a case where the speed at which the Department sought termination weighs against the granting of termination. The guardian ad litem, an advocate for the children, expressed an opinion that termination was in the children's best interests shortly after the children were taken into the Department's custody, but the Department did not seek termination until August 8, 2013, over thirteen months after the children were taken into custody and within the statutory time frame. Doe does not support her assertion that the Department did not make significant effort toward reunification because of a bias toward termination with any evidence on the record. Rather, the evidence indicates that Doe was given over a year to work on the case plan that was developed to help her meet the requisite level of stability in order to reunify with her children before the termination petition was granted. She did not start to make any noticeable progress toward cooperation with the Department until October 2013, approximately sixteen months after her children were taken into custody.

The magistrate's determination that termination was in the best interests of the children was well-reasoned, comprehensive, and supported by substantial and competent evidence. The magistrate first noted that completing the case plan "is not simply a matter of checking items off a to-do list" but is designed "to produce changes in behavior to resolve the problems that brought the children into foster care." The magistrate noted that despite warnings "early and often that failure to work the case plan could result in termination of her parental rights," prior to summer/fall of 2013, Doe continued to use methamphetamine and showed little progress. The magistrate credited the significant change in attitude and behavior that occurred in Doe in the fall of 2013, but also recognized Doe's continued limitations:

> The change in Mother's attitude and behavior in the fall of 2013 is of huge significance. It is, however, only a beginning. Mother is currently unemployed, currently does not have a home for the children, and does not have transportation. Mother needs continuing mental health counseling to address her own trauma and anger issues, which in turn impact her ability to maintain employment and to

13

parent her children. Mother needs further drug counseling, so she can have a realistic plan for maintaining her sobriety, including a safe and sober support group, if she is to have a realistic expectation that she can remain drug free while supporting and raising six children. Mother needs intensive, individualized parenting education. In other words, if the petition to terminate is not granted, Mother is for all practical purposes just beginning a plan that would have a hope of enabling the children to return to a safe and stable home with their mother.

In addition to these continued deficiencies, the magistrate explained that the definition of neglect for failure to comply with the case plan imposes a time limit on a parent's efforts to achieve reunification which is not arbitrary:

It recognizes the significance of time in a child's life. Further waiting in the hope that Mother will successfully complete a reunification plan, when the children have already been in state custody for the last twenty-two months, is beyond the statutory time frame and is too long for these children to wait for the safe and stable home that they deserve (particularly when [taking] into consideration that the two oldest children previously spent 19 months in foster care and the next oldest previously spent 12 months in foster care, for the same issues that brought the children into foster care this time).

Finally, the magistrate noted that the children were faring well in their current situation:

Their normal needs for a safe and stable home are being met. Their special mental health and medical needs are being met. They are engaging in extracurricular activities, and experiencing some success academically and socially. All of the children are together in a home that is likely to be their adoptive placement. They have the care all children should have, and that their mother cannot currently provide and will not be able to provide in the foreseeable future.

Based on the record before us, we agree with the finding that termination of Doe's parental rights was in the best interests of the children. Doe was given almost a year from the time the case plan was approved until a petition for termination was filed, but showed very little progress and indeed was often hostile to the Department's efforts to assist her, until at least sixteen months after her children were taken into the Department's custody. Doe never developed the skills necessary to extend her visitation with her children beyond one to two hours, once a week, in the controlled environment of the Department--a far cry from what would be required of a parent. Although Doe's improved attitude and behavior is laudable, the fact remains that she is still not in a position to parent six children and is not likely to be in the foreseeable future. She lacks stable housing and income, exhibits a continued inability to properly supervise all of the children outside the confines of a room at the Department, and has

not demonstrated a likelihood that she will be able to maintain her sobriety or the requisite level of mental health to be a parent. This is especially true given that it is the third time the older children have been removed for significant periods from the home for essentially the same issues. In addition, the children are thriving in their current environment. Given the time that has passed, the children simply cannot afford to wait for Doe to reach a goal that is still so far away and may never be achieved. This is, unfortunately, a classic example of "too little, too late." The magistrate did not err in determining it was in the children's best interests for Doe's parental rights to be terminated.

## III.
## CONCLUSION

The magistrate was not required to make an explicit finding that the Department engaged in "reasonable efforts" to reunite Doe with her children. The magistrate did not err in its determination that Doe neglected her children as defined by both section 16-1602(28) and section 16-2002(3)(b) or in finding that termination was in the best interests of the children. The magistrate's decree terminating Doe's parental rights to her six children is affirmed.

Judge GRATTON and Judge MELANSON **CONCUR.**